MARK LEVY v. THE FIRST NATIONAL BANK OF HASTINGS.

[FILED OCTOBER 4, 1889.]

1. **Principal and Agent.** A principal is bound by the acts of his agent to the extent of the apparent authority conferred on him. (*Webster v. Wray*, 17 Neb., 579; *Lorton v. Russell, ante*, 372.)

2. ————: NEGOTIABLE INSTRUMENTS: FORGERY. A check drawn by I. W. F., paymaster, on J. G. T., assistant treasurer B. & M. R. R. Co. in Neb., to the order of F. L. D., was presented to the Nat. Bk. of H. by L. with a forged indorsement of the name of F. L. D. thereon, and the money received by L. from the bank, which, having accounted to F. L. D. for the amount of the check, sued L. therefor. *Held*, That L. was liable.

ERROR to the district court for Adams county.    Tried below before GASLIN, J.

*Capps & McCreary*, for plaintiff in error:

The act of a special agent outside the scope of his authority is void, unless ratified, but does not affect the validity of what he was authorized to do. (*Davenport Savings Association v. Ins. Co.*, 16 Ia., 74; *Bangor Boom Corporation v. Whiting*, 29 Me., 123.)    All persons are bound to inquire into the extent of a special agent's powers. (*Wheeler v. Plattsmouth*, 7 Neb., 279.)    An agent can bind his principal only while acting within the scope of his authority. (*Matthews v. Sowle*, 12 Neb., 404; *Mechanics' Bank v. R. Co.*, 3 Kernan [N. Y.], 599; *Mussey v. Beecher*, 3 Cush. [Mass.], 511; *Coleman v. Riches*, 16 C. B. [81 E. C. L.], 104; *Grant v. Norway*, 10 Id., 665.)    The bank placed it in the power of Abbott and Dudley to do the wrong and must therefore suffer. (*Homan v. Laboo*, 2 Neb., 297; *Dinsmore v. Stimbert*, 12 Id., 439.)    Were all the parties equally innocent the law would leave them undisturbed. (*Bank v. Bank*, 17 Mass., 33.)    Only those who appear on a negotiable instrument can be held liable for its non-payment. (*Webster v. Wray*, 19 Neb., 558, and cases cited; *R. Co. v. Benedict*, 5 Gray [Mass.], 561; Edwards on Bills, 80; Chitty on Bills, 27.)

*J. B. Cessna*, for defendant in error:

Violation of private instructions by an agent acting under a general authority will not relieve the principal. (Story on Agency, secs. 126, 127–133; *Minter v. R. Co.*, 41 Mo., 503; *Cruzan v. Smith*, 41 Ind., 288; *Thurber v. Anderson*, 38 Ill., 167; *Palmer v. Cheney*, 35 Id., 281; *Noble v. Nugent*, 89 Id., 252.)    Partial acceptance by the principal of a contract made by an agent adopts the whole. (*McKeigan v. Hopkins*, 19 Neb., 33; *Mortgage Co. v. Hen-*

derson, 13 Id., 159 ; *Rich v. Bank*, 7 Id., 201; *Joslin v. Miller*, 14 Id., 91; *Beidman v. Goodell*, 9 N. W. Rep., 900; *Laurence v. Lewis*, 133 Mass., 161; *Nicholls v. Shafer*, 30 N.W. Rep., 383 ; *Bank v. Bank*, 16 Wis., 125 ; *McCormick v. Peters*, 24 Neb., 70.) Acceptance of an agent's unauthorized acts amounts to ratification. (1 Am. and Eng. Ency. of Law, 432 ff.; *Tooker v. Sloan*, 30 N. J. Eq., 394; *Jones v. Atkinson*, 68 Ala , 167; *Perkins v. Boothby*, 71 Me., 91; *Guilford v. Ashbaugh*, 44 Ia., 519.) The exceptions should present specifically the objections relied on. (*Lowrie v. France*, 7 Neb., 192; *Tomer v. Densmore*, 8 Id., 384.) By the assignment by delivery of the forged draft, under the facts disclosed, plaintiff in error is liable. (*Smith v. McNair*, 19 Kas., 330; *Snyder v. Reno*, 38 Ia., 329; *Cabot Bank v. Morton*, 4 Gray [Mass.], 156 ; *Jones v. Ryde*, 5 Taunt., 488 ; *Wilkinson v. Johnson*, 3 B. & C., 428 ; *Gurney v. Womersly*, 28 Eng. Law and Eq., 256 ; *Terry v. Bissell*, 26 Conn., 23 ; Byles on Bills, 278.)

COBB, J.

This cause is brought to this court on error, by the defendant in the court below, for the review of the judgment of the district court of Adams county.

The First National Bank of Hastings brought an action against Mark Levy, alleging that it was an organization of the government of the United States ; that on August 8, 1887, the defendant sold a bill of goods to a person unknown, who represented himself as F. L. Dudley, taking in payment for the goods a check, or order as follows :

" Roll Faber.                                                        No. 5443.
          " BURLINGTON & MISSOURI R. R. IN NEB.
" $90.                                        OMAHA, June 30, 1887.
" J. G. Taylor, asst. treasurer, pay to the order of F. L. Dudley, ninety dollars ; payable at the Nebraska National Bank, Omaha ; First National Bank, Lincoln ; First Na-

tional Bank, Denver. Paid, Omaha, August 10, 1887, Nebraska National Bank. J. W. FLOYD,

"*Paymaster.*"

Endorsed : " Endorsement must be made in ink, must be technically correct—if by a X should be witnessed, and residence of witnesses stated. Signature of employee, F. L. Dudley. Witness, Myron Abbott, residence *. * * Pay Omaha National Bank, Omaha, or order, for collection, account of First National Bank, Hastings, Nebraska, Geo. H. Pratt, cashier."

That on August 9 the defendant sold or procured said note or draft, to be sold and assigned by delivery to the plaintiff, the defendant receiving therefor ninety dollars in cash: that the draft was immediately presented for payment, and payment refused for the reason that F. L. Dudley, the payee, never endorsed said check, draft, or order, and his signature was a forgery ; that on August 15, the plaintiff received notice of the refusal, and gave notice to the defendant, requesting him to redeem the draft, and pay the amount, which he refused to do. Wherefore the plaintiff asks judgment against the defendant, with interest on the amount from August 9, 1887.

The defendant answered denying each and every allegation of the plaintiff.

There was a trial to the court, without a jury, with findings for the plaintiff and judgment for $95.26 and costs.

The defendant's motion for a new trial having been overruled the cause is brought to this court on the following errors :

1. That if the plaintiff was entitled to recover anything in the court below, it should not have been for a greater sum than the defendant actually received, $6.30.

2. That the judgment is not supported by evidence that the plaintiff sustained any loss, as alleged in the petition.

3. The judgment is contrary to law and not supported by evidence.

4. That the evidence, as shown by Exhibit "A," establishes the fact that the plaintiff never lost anything as alleged, and said evidence was introduced by the plaintiff on the trial in the court. below.

5. That the court overruled the defendant's motion for a new trial.

It appears from the bill of exceptions that in August, 1887, the plaintiff in error was engaged in keeping a gentlemen's furnishing store at Hastings, Adams county. In this store were employed Myron H. Abbott, as under-clerk, Moses H. Levy, brother of the proprietor, as "confidential and financial man, and general manager and assistant bookkeeper," in the proprietor's absence. On August 9 the proprietor was absent in New York, and in the east, purchasing merchandise for the fall season's trade. The two clerks, Levy and Abbott, were present, in charge of the store, when a man, an entire stranger, came in and bought of Abbott a bill of goods amounting to $7.07, and offered the check mentioned in payment. Abbott took the check to Levy to ascertain if there was any money in the drawer to cash it, and Levy answered there was not. Abbott said that he would then have to go to the bank to get it cashed and Levy said that he (the man) would have to sign it. The man then wrote the name of the payee of the check—as that of his own—on the back of it, Abbott took it across the street to the bank, got it cashed, received the full amount, returned to the store with the money, took out the amount of the bill of goods sold, and gave to the customer the balance, putting the $7.07 in the cash drawer of the store. The customer received the money, left his package of goods in the store, and departed. He makes no subsequent appearance in the transaction.

It appeared upon the cross-examination of Abbott, on the trial, that he signed the back of the check as a witness to the stranger's signature. The check was forwarded by the bank and presented for payment, August 10, to the Ne-

braska National Bank, of Omaha, and by it refused.  The check was identified from the deposition of J. G. Taylor, assistant treasurer of the railroad company, on whom it was drawn, and the endorsement of F. L. Dudley, the payee, was proven to be a forgery.

Upon the trial in the district court, as well as the argument of counsel in this court, the point relied upon seems to have been the want of authority of Abbott, the clerk, to bind his employer, the plaintiff in error, or to create a liability on his part, in the manner and by the means set out in the pleadings and proof.

The witness, Abbott, on his cross-examination, was asked:

Q. State as to whether Mr. Levy gave any instructions as to how the business should be conducted in his absence.

A. He said we should be careful in taking checks to know the signatures.

Q. You say that this transaction was without the knowledge or authority of Mr. Levy?

A. He was not there, but he knew that I had taken checks.

Q. How many had you taken?

A. I could not tell.

Q. What one check had you ever taken?

A. John Blank's, and Burger Bros.'

Q. By the court: Were they the same checks as this?

A. No, sir; I had taken this kind of check though.

Q. By the court: Do you say that you took checks of that kind before and after this, and that Mr. Levy knew it?

A. Yes, sir.

The defendant (plaintiff in error) testified that the witness Abbott was in his employ as a boy to sell goods, clean out the store, and fix up the store; that he had no charge of the books, or of the business whatever; and continued his testimony in answer to the question : What authority

had he of you, at any time, as to receiving checks in payment for goods ?

A. He never had any authority ; I never allowed, when I was in the store, any of my clerks to receive any checks whatever, except they turn them over to me to examine.

The witness having stated that he was absent at New York, and the east, at the time of this occurrence was asked the further

Q. What instructions, or order, if any, did you leave with your clerks, before you went away, as to the taking of checks?

A. I told Abbott and another clerk, at the time I left, not to take any checks whatever, as the day before I heard of some spurious checks. Also I told them they would not be allowed to deposit any checks in the drawer for selling any merchandise, and charge it up to my money orders and bank business, without permission from my head clerk, who kept the books.

Q. Was your head clerk present ?

A. Yes, sir, and heard it. I told him I expected him to see to it in every respect.

Q. What is your head clerk's name?

A. Moses H. Levy.

On cross-examination he stated that he left Moses H. Levy as manager of his business ; that he had control of everything in his absence, as far as he would leave it with any one.

Taking all this evidence together, it is apparent that there was authority in Levy and Abbott, the one as head clerk and manager, the other as clerk and salesman, to transact all the business of the store, and of its retail dealings. And I think it must be conceded that Abbott had the apparent authority to carry the check to the bank, going directly from the chief clerk and manager of the store, and acting as messenger, in having the check cashed at the bank. And if he had this apparent authority, though

the real authority expressed and delegated by the plaintiff in error did not extend to bank transactions, and while the bank and its officers had no notice of any limitation placed upon his authority, they were still justified in dealing with him to the extent of his apparent authority. There was nothing in the transaction itself to awaken the officers' suspicions of fraud in the check, but everything, on the face of it, to invite confidence in its regularity.

We have recently examined the questions of limited and of apparent agency in the case of *Lorton v. Russell* at the present term, and have held that an implied agency in the necessary transactions of an accustomed business is a delegated authority.

I therefore come to the conclusion that in this court of review the case stands the same as though the plaintiff in error had personally carried the check to the bank and cashed it, the same as his clerk and agent, Abbott, did.

As to the liability which the law devolves upon him in that case, to make the check and its endorsement good, there can be no doubt. The question involved was considered and decided in this court in *Walsh v. Rogers*, which was twice considered and reported, 12 Neb., 28; 15 Id., 309. It was also before the supreme court of Connecticut, and decided in like manner in *Terry v. Bissell*, 26 Conn., 23, cited by defendant in error, and which furnishes an exhaustive argument supported by numerous citations of authority. The case of *Smith v. McNair*, 19 Kansas, 330, also cited by counsel, is likewise an instructive and convincing precedent in support of the view maintained.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.